UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH ETHERAGE and KIRSTIN ETHERAGE, and the marital community thereof,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNNY L. WEST and "JANE DOE" WEST, and the marital community therof,<br><br>Defendants. | CASE NO. C11-5091BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL DISCOVERY |

This matter comes before the Court on Plaintiffs Joseph and Kirstin Etherage's ("Etherage") Motion to Compel Discovery (Dkt. 14). The Court has reviewed the briefs filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On October 29, 2010, Etherage filed a complaint against Defendants Johnny and Jane Doe West ("West") in the Superior Court for the State of Washington in and for the County of Pierce. Dkt. 1, Exh. A ("Complaint"). Etherage asserts claims for intentional interference with employment relationship/interference with contract expectancy, libel per se, slander per se, invasion of privacy, slander, and libel. *Id*.

On February 1, 2011, West removed the action to this Court. Dkt. 1.

ORDER - 1

On April 1, 2011, Etherage filed a Motion to Compel. Dkt. 14. On April 18, 2011, West responded. Dkt. 17. On April 22, 2011, Etherage replied. Dkt. 20.[1]

## II.  FACTUAL BACKGROUND

During the relevant time, Etherage was Deputy Chief of the Department of Behavioral Health at Madigan Army Medical Center ("Madigan," located on Joint Base Lewis McChord) and responsible for the development and deployment of the Automated Behavioral Health Clinic ("ABHC"), a software tool designed to assess soldiers' mental health. Dkt. 15, Declaration of Dr. Joseph Etherage ("Etherage Decl."), ¶¶ 2, 7; Dkt. 19, Declaration of David T. Orman ("Orman Decl.") ¶ 3.  Etherage served as Deputy Director and Clinical Requirements Advisor for ABHC.  Etherage Decl. ¶ 5.  At Madigan, Etherage worked with Glenn Iacovetta, who served as the ABHC Technical Program Manager.  Dkt. 18, First Declaration of Johnny L. West ("West Decl.") ¶ 5.

The Post Traumatic Stress Disorder-Traumatic Brain Injury/Behavioral Health Integration Office ("PTB") Headquarters, U.S. Army Medical Command ("MEDCOM") in San Antonio, Texas, funded and provided oversight to ABHC.  *Id*. ¶¶ 2-3.  West served as a Senior Program Manager at the PTB, responsible for general oversight of the ABHC program, among other programs.  *Id*. ¶ 4.  As Senior Program Manager, West declares that he was responsible for assessing the efficacy of the ABHC program, tracking the program's development schedule, ensuring program compliance with laws and regulations, coordinating administrative approvals for the program, and monitoring the ABHC's budget.  *Id*. ¶ 4; Orman Decl. ¶ 4.

West declares that he and Mr. Iacovetta have a longstanding friendship. They have known each other for over 15 years and served two tours of duty together in the

---

[1] Although Etherage complied with the page limitations pursuant to Local Rule CR 7(e), Etherage failed to comply with the format requirements of Local CR 10(e).  The Court advises Etherage to comply with all of the Local Rules and, if necessary, request leave to file an overlength brief (Local Rule CR 7(f)).

ORDER - 2

Army. *Id.* ¶ 6. In fact, West recommended Mr. Iacovetta for the ABHC Technical Program Manager position. *Id.* In June 2010, Mr. Iacovetta raised concerns with West that Etherage may be inappropriately spending funds on the development of ABHC after further development of the program was halted due to fiscal law concerns. *Id.* ¶ 7.

In several emails, West raised various concerns relating to the operation and funding of ABHC. *See* Etherage Decl., Exh D & E. In general, West raised concerns regarding costs associated with the program, funding of the program after development was halted, use of a contractor without the necessary approvals, as well as general mismanagement of ABHC. *Id.*, Ex. E ("I would strongly suggest that you have a talk with Mr. Rick Barnhill about what was said in an open forum about [Etherage's] multiple request/demands on the contractor that were made outside of Glenn and the KO's knowledge."); *id.*, Ex. K ("[Etherage] has a personal relationship with the contractor, and was the COR prior to Mr. Icovetta – and carries on a regular dialogue with the contractor . . ."). West declares that he raised these issues out of the concern for the ABHC program and as part of his role as Program Manager. West Decl. ¶ 10.

After reviewing the Complaint and other relevant documents, the United States removed the case to this Court pursuant to 28 U.S.C. § 2679(d) because it determined that West was acting within the scope of his office or employment at all times relevant to Etherage's allegations. *See* Dkt. 1. In addition, the United States filed a Certification from Jenny A. Durkan, United States Attorney for the Western District of Washington, that stated as follows:

> On the basis of the Complaint in this matter and the information now available to me, including that provided by Mr. West and his superiors in the United States Army, I hereby certify that Johnny L. West was an employee of the United States Army and acting within the scope of his employment at all times and in all respects relevant to the allegations in the Complaint.

Dkt. 1-3. Accordingly, pursuant to 28 U.S.C. § 2679(d)(2), this case was "deemed an action against the United States . . . and the United States shall be substituted as the party defendant." *Id*.

### III.  DISCUSSION

**A.     Standard**

The district court's review of an Attorney General's certification is *de novo*. *Meridian Intern. Logistics, Inc. v. U.S.*, 939 F.2d 740, 745 (9th Cir. 1991). The Attorney General's certification is conclusive unless challenged. *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153 (4th Cir. 1997). When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment. *Id*.

The question presented to the Court is whether Etherage is entitled to discovery when challenging the certification. The Court is unaware of and the parties have not cited any controlling Ninth Circuit precedent on this issue. West argues that the Court should apply the rule in the First Circuit, which is as follows:

> In order for discovery of immunity-related facts to be warranted, the plaintiff must indicate what sort of facts he or she hopes to discover that would create a material factual dispute and could support a viable theory that the individual defendant was acting outside the scope of employment.

*Davric Maine Corp. v. U.S. Postal Service*, 238 F.3d 58, 68 (1st Cir. 2001). Etherage has failed to cite any other rule on this issue. Etherage, however, appears to implicitly concede that West has proposed an appropriate rule because Etherage's reply brief sets forth specific facts that Etherage argues would "raise a genuine factual issue relevant to Mr. West's scope of employment." Dkt. 20 at 1. Unaware of any controlling authority to the contrary, the Court will adopt the First Circuit's test and place the burden on

Etherage to indicate what sort of facts he hopes to discover that would create a material factual dispute with regard to West's scope of employment.

## B. Scope of Employment

In determining whether a United States employee acted within the scope of his or her office or employment, the district court applies the law of the state in which the alleged tort occurred. *Green v. Hall*, 8 F.3d 695, 698-99 (9th Cir. 1993). The Washington State Supreme Court set forth the test for vicarious liability as follows:

> Our case law makes clear that, once an employee's underlying tort is established, the employer will be held vicariously liable if the employee was acting within the scope of his employment. An employer can defeat a claim of vicarious liability by showing that the employee's conduct was (1) "intentional or criminal" and (2) "outside the scope of employment."

*Robel v. Roundup Corp.*, 148 Wn.2d 35, 52-52 (2002) (internal citations and quotations omitted). The test for determining when an employee acts within the scope of employment is as follows:

> whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.

*Rahman v. Washington*, 170 Wn.2d 810, 815-16 (2011). "The proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Robel*, 148 Wn.2d at 53. For example, in *Robel*, the court found that "the Fred Meyer deli workers tormented Robel on company property during working hours, as they interacted with co-workers and customers and performed the duties they were hired to perform."

On the other hand, Washington courts have found that an act is outside the scope of employment if it is "far beyond" or "too little actuated" by a purpose to serve the employer. *See e.g., Smith v. Sacred Heart Med. Cent.*, 144 Wn. App. 537 (2008) (sexual misconduct furthering the employee's "compulsion for personal sexual gratification");

*Niece v. Elmview Group Home*, 131 Wn. 2d 39 (1997) (employee of group home was outside scope of employment when he raped a disabled resident); *Kuehn v. White*, 24 Wn. App. 274 (1979) (truck driver's assault of another driver with metal pipe was outside of scope).

In this case, Etherage's propounded discovery goes well beyond the scope of employment issues. For example, Etherage seeks personnel files and documents of prior investigations. These are not specific facts that create a material factual dispute as to West's scope of employment. *Davric*, 238 F.3d at 68. Etherage, however, does provide information that the Army's original position was that this situation was a private matter between Etherage and West. *See, e.g.,* Etherage Decl., Exh. M ("Our JAG has not changed their position. It's a private civil matter according to our JAG. I don't control or influence MEDCOM's JAG so I'm not sure what else I can do for you in this situation."). Based on this information, Etherage argues that:

> The Army did nothing to address this matter, and repeatedly informed Dr. Etherage that the Army's official position was that this is a private matter. The obvious implication is that, as a private matter, Mr. West's actions had nothing to do with Mr. West's performance of his job duties or scope of employment. It is noteworthy that the U.S. Government is now taking the exact opposite position. This inconsistency alone raises a factual issue concerning Mr. West's scope of employment.

Dkt. 20 at 2. The Court agrees with Etherage to the extent that the specific facts behind the Army's initial position that West's actions raised a "private civil matter" may create a material factual dispute as to West's scope of employment. Therefore, Etherage's motion to compel granted on this issue only.

Upon review of Etherage's propounded discovery, the Court finds that West and the Government should be compelled to respond to Interrogatories 5 & 6 and Requests for Production Numbers 16 & 17. *See* Dkt. 16, Declaration of Joe D. Frowley, Exh. A. The responses are due 30 days from the date of this order or at a later date upon agreement of both parties.

### C. Reasonable Expenses

If a court grants a motion to compel, it must require the party failing to act to pay the reasonable expenses of the other party caused by the failure "unless other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). West argues that an award of expenses would be unjust because, in an action challenging a certification, Etherage has the burden to prove that discovery is appropriate. Dkt. 17 at 6 n. 2. The Court agrees. Therefore, Etherage's motion for reasonable expenses is denied.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Etherage's Motion to Compel Discovery (Dkt. 14) is **GRANTED in part** and **DENIED in part**. West is compelled to respond to Etherage's Interrogatories 5 & 6 and Requests for Production Numbers 16 & 17 within 30 days from the date of this order or as otherwise agreed to by the parties. The remainder of Etherage's motion is **DENIED**.

DATED this 19th day of May, 2011.

BENJAMIN H. SETTLE
United States District Judge