UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH ETHERAGE and KIRSTIN
ETHERAGE, and the marital community
thereof,

    Plaintiffs,

  v.

UNITED STATES,

    Defendant.

CASE NO. C11-5091BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION TO
COMPEL DISCOVERY

    This matter comes before the Court on Plaintiffs Joseph and Kirstin Etherage's ("Etherage") Motion to Compel Discovery. Dkt. 26. The Court has reviewed the briefs filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

    On October 29, 2010, Etherage filed a complaint against Defendants Johnny and Jane Doe West ("West")[1] in the Superior Court for the State of Washington in and for the County of Pierce. Dkt. 1, Exh. A ("Complaint"). Etherage asserts claims for intentional interference with employment relationship/interference with contract

---

[1] On June 6, 2011, the United States was substituted as Defendant. Dkt. 25.

ORDER - 1

expectancy, libel per se, slander per se, invasion of privacy, slander, and libel. *Id*. On February 1, 2011, the matter was removed to this Court. Dkt. 1.

On May 19, 2011, the Court granted in part Etherage's motion to compel certain discovery. Dkt. 22

On September 1, 2011, Etherage filed another motion to compel. Dkt. 26. On September 19, 2011, the Government responded. Dkt. 29. On September 23, 2011, Etherage replied. Dkt. 31.

## II. FACTUAL BACKGROUND

During the relevant time, Etherage was Deputy Chief of the Department of Behavioral Health at Madigan Army Medical Center ("Madigan,") located on Joint Base Lewis McChord), and responsible for the development and deployment of the Automated Behavioral Health Clinic ("ABHC"), a software tool designed to assess soldiers' mental health. Dkt. 15, Declaration of Dr. Joseph Etherage ("Etherage Decl."), ¶¶ 2, 7; Dkt. 19,

Declaration of David T. Orman ("Orman Decl.") ¶ 3. Etherage served as Deputy Director and Clinical Requirements Advisor for ABHC. Etherage Decl. ¶ 5. At Madigan, Etherage worked with Glenn Iacovetta, who served as the ABHC Technical Program Manager. Dkt. 18, First Declaration of Johnny L. West ("West Decl.") ¶ 5.

The Post Traumatic Stress Disorder-Traumatic Brain Injury/Behavioral Health Integration Office ("PTB") Headquarters, U.S. Army Medical Command ("MEDCOM") in San Antonio, Texas, funded and provided oversight to ABHC. *Id*. ¶¶ 2-3. West served as a Senior Program Manager at the PTB, responsible for general oversight of the ABHC program, among other programs. *Id*. ¶ 4. As Senior Program Manager, West declares that he was responsible for assessing the efficacy of the ABHC program, tracking the program's development schedule, ensuring program compliance with laws

and regulations, coordinating administrative approvals for the program, and monitoring the ABHC's budget. *Id.* ¶ 4; Orman Decl. ¶ 4.

West declares that he and Mr. Iacovetta have a longstanding friendship. They have known each other for over 15 years and served two tours of duty together in the Army. *Id.* ¶ 6. In fact, West recommended Mr. Iacovetta for the ABHC Technical Program Manager position. *Id.* In June 2010, Mr. Iacovetta raised concerns with West that Etherage may be inappropriately spending funds on the development of ABHC after further development of the program was halted due to fiscal law concerns. *Id.* ¶ 7.

In several emails, West raised various concerns relating to the operation and funding of ABHC. *See* Etherage Decl., Exh D & E. In general, West raised concerns regarding costs associated with the program, funding of the program after development was halted, use of a contractor without the necessary approvals, as well as general mismanagement of ABHC. *Id.*, Ex. E ("I would strongly suggest that you have a talk with Mr. Rick Barnhill about what was said in an open forum about [Etherage's] multiple request/demands on the contractor that were made outside of Glenn and the KO's knowledge."); *id.*, Ex. K ("[Etherage] has a personal relationship with the contractor, and was the COR prior to Mr. Icovetta – and carries on a regular dialogue with the contractor . . ."). West declares that he raised these issues out of the concern for the ABHC program and as part of his role as Program Manager. West Decl. ¶ 10.

After reviewing the Complaint and other relevant documents, the United States removed the case to this Court pursuant to 28 U.S.C. § 2679(d) because it determined that West was acting within the scope of his office or employment at all times relevant to Etherage's allegations. *See* Dkt. 1. In addition, the United States filed a Certification from Jenny A. Durkan, United States Attorney for the Western District of Washington, that stated as follows:

> On the basis of the Complaint in this matter and the information now available to me, including that provided by Mr. West and his superiors in the United States Army, I hereby certify that Johnny L. West was an employee of the United States Army and acting within the scope of his employment at all times and in all respects relevant to the allegations in the Complaint.

Dkt. 1-3. Accordingly, pursuant to 28 U.S.C. § 2679(d)(2), this case was "deemed an action against the United States . . . and the United States shall be substituted as the party defendant." *Id*.

### III. DISCUSSION

**A.  Standards**

In its previous order on Etherage's discovery motion, the Court adopted the First Circuit's test for determining when a party is entitled to discovery in an action such as this. *See* Dkt. 22 at 4-5. That test is as follows:

> In order for discovery of immunity-related facts to be warranted, the plaintiff must indicate what sort of facts he or she hopes to discover that would create a material factual dispute and could support a viable theory that the individual defendant was acting outside the scope of employment.

*Davric Maine Corp. v. U.S. Postal Service*, 238 F.3d 58, 68 (1st Cir. 2001).

With regard to Etherage's scope of employment, the district court applies the law of the state in which the alleged tort occurred. *Green v. Hall*, 8 F.3d 695, 698-99 (9th Cir. 1993). The Washington State Supreme Court set forth the test for vicarious liability as follows:

> Our case law makes clear that, once an employee's underlying tort is established, the employer will be held vicariously liable if the employee was acting within the scope of his employment. An employer can defeat a claim of vicarious liability by showing that the employee's conduct was (1) "intentional or criminal" and (2) "outside the scope of employment."

*Robel v. Roundup Corp.*, 148 Wn.2d 35, 52-52 (2002) (internal citations and quotations omitted). The test for determining when an employee acts within the scope of employment is as follows:

ORDER - 4

> whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.

*Rahman v. Washington*, 170 Wn.2d 810, 815-16 (2011). "The proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Robel*, 148 Wn.2d at 53. For example, in *Robel*, the court found that "the Fred Meyer deli workers tormented Robel on company property during working hours, as they interacted with co-workers and customers and performed the duties they were hired to perform." *Id*.

On the other hand, Washington courts have found that an act is outside the scope of employment if it is "far beyond" or "too little actuated" by a purpose to serve the employer. *See e.g., Smith v. Sacred Heart Med. Cent.*, 144 Wn. App. 537 (2008) (sexual misconduct furthering the employee's "compulsion for personal sexual gratification"); *Niece v. Elmview Group Home*, 131 Wn. 2d 39 (1997) (employee of group home was outside scope of employment when he raped a disabled resident); *Kuehn v. White*, 24 Wn. App. 274 (1979) (truck driver's assault of another driver with metal pipe was outside of scope).

**B.     Etherage's Motion**

On September 1, 2011, Etherage propounded a third set of requests for production on the Government. Dkt. 28, Decl. Of Joe D. Frawley, Exh. D ("RFP"). The Government has objected to sixteen of the RFP's, which has resulted in the instant motion to compel. Etherage asserts that the facts he seeks fall into four categories, which are as follows:

> [T]here were no issues to report to Dr. Etherage's supervisors, Mr. West knew that no issues existed, Mr. West communicated the non-existent issues in a manner that was not decided to address any problem, and that the U.S. Government has considered this a private civil matter up until it elected to substitute itself for Mr. West in this litigation.

ORDER - 5

Dkt. 26 at 8. These categories can be described as (1) the falsity of West's comments, (2) West's ulterior motives, (3) West's job functions, and (4) the Government's consideration of the issues between Etherage and West as a "private civil matter." The Court will address each category below.

### 1. Falsity

After review of the briefs and the RFP's, a significant dispute between the parties is evidence regarding the veracity of West's statements. The Court finds that Etherage is not entitled to evidence that is relevant only to the falsity of West's statements because "[e]mployers may be liable for their employees' unauthorized slanderous statements made within the [a]pparent scope and course of employment." *Sanders v. Day*, 2 Wn. App. 393, 397 (1970). Thus, even if West's statements were absolutely false, West could still be found to have been acting within the scope of his employment.

Applying this finding to the RFP's propounded by Etherage, some of the RFP's were properly objected to by the Government. For example, RFP No. 6 reads as follows:

> Please produce any document, as described above, or other evidence that supports the contention that Dr. Joseph Etherage had a personal relationship, or any other inappropriate relationship, with Talus360 or any other contractor that had a contract, at any time, with the United States Government as alleged by Mr. West in document USAO-Etherage-000153 of the United States' response to Plaintiffs' Second Set of Requests for Production to the United States.

In support of this RFP, Etherage argues that the request is intended to find evidence in support of his theory that West's statements were "intended to protect Mr. Iacovetta who was being investigated for improper conduct concerning Talus360 and to shift the blame to Dr. Etherage." Dkt. 26 at 11. The request, however, seeks information regarding Etherage's professional relationships and Etherage fails to correlate evidence of his professional relationships with the issues regarding West's scope of employment. Therefore, the Court denies Etherage's motion to compel a response to RFP No. 6 because Etherage has failed to show that the information sought in this RFP would create

ORDER - 6

a material factual dispute or could support a viable theory that West was acting outside the scope of his employment.

Based on the same reasoning, the Court finds that Etherage has failed to correlate the information requested in RFP No. 5 (whether Etherage was involved in an Anti-Deficiency Act investigation), RFP No. 7 (requesting information similar to No. 6), RFP No. 10 (information West received supporting his "concerns"), and RFP No. 12 (information Etherage performed unauthorized work). Therefore, the Court denies Etherage's motion to compel a response to these RFP's.

**2. Ulterior Motive**

Another significant dispute between the parties is the allegation that West possessed an ulterior motive when he made the statements regarding Etherage. The allegation is that West somehow intended to protect Mr. Iacovetta by providing certain individuals with information disparaging Etherage. The best example of Etherage's theory regarding West's ulterior motion is RFP No. 16, which provides as follows:

> Please produce any document, as described above, that relates to LTC Mark Baggett's complaints concerning Mr. West's alleged attempts to improperly influence the sexual harassment investigation concerning Mr. Iacovetta.

Etherage argues that the requested evidence would "show that Mr. West has continued to act in an attempt to protect Mr. Iacovetta and that his actions are not motivated by a desire to aid the ABHC." Dkt. 26 at 14.

The Government argues that West's personal agenda is irrelevant to whether he was acting within his scope of employment. Dkt. 29 at 7-9. The Court agrees. In Washington, the "proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Robel*, 148 Wn.2d at 53. Whether or not West was also acting to protect Mr. Iacovetta is irrelevant if West was fulling his job function. Moreover, information regarding West's actions to protect

Mr. Iacovetta in a separate investigation is wholly irrelevant to the issue of West's job functions. Therefore, the Court denies Etherage's motion to compel a response to RFP No. 16 because Etheage has failed to show that the information sought in this RFP would create a material factual dispute or could support a viable theory that West was acting outside the scope of his employment.

Etherage argues that RFP's 5-8, 10-12, and 15 seek evidence that will show that "Mr. West was not acting with a purpose to serve the Army when making the knowingly false statements." Dkt. 31 at 2. To the extent that these RFP's were propounded for that purpose, the Court denies Etherage's motion to compel a response to them.

### 3. Job Functions

The "proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Robel*, 148 Wn.2d at 53. With regard to the instant motion, RFP's Nos. 1-4 request certain agencies' "directives, regulations, and policies" that cover reporting and responding to allegations of improper conduct. One of Etherage's theories is that West was making statements to officials and/or individuals who had no authority to respond to or investigate the substance of the allegations. Dkt. 26 at 9. Specifically, Etherage argues that:

> if Mr. West was attempting to address these issues of concern in an effort to improve the ABHC he would want something done to rectify any improper behavior. Mr. West, however, did the exact opposite and attempted to ensure that nothing got done as a result of his communication.

*Id*. The Court agrees to the extent that Etherage has met his burden by showing that the facts requested could possibly create a question of fact regarding whether West was fulfilling his job functions at the time the statements were made.

The Government argues that, even if West reported the violations to an improper person or in an improper way, the violation does not render his conduct outside the scope of his employment. Dkt. 29 at 10 (citing *Rahman*, 170 Wn.2d at 817). Etherage,

ORDER - 8

however, has shown that West may have done more than simply violate a workplace rule or policy. For example, if the individuals that West communicated with had no authority to correct the issues of concern, then why would these communications be considered either within the scope of West's job functions or acts that serve his employer? Etherage is entitled to evidence to support this theory and the proposed question of facts.

Therefore, the Court grants Etherage's motion to compel on RFP's Nos. 1-4. In addition, the Court finds that the following RFP's seek information regarding West's job functions: RFP No. 8 (West's involvement in an ADA investigation), RFP No. 9 (West's supervisory role) & RFP No. 11 (West's involvement with ADA investigation). The Court grants Etherage's motion as to these RFP's as well. The Court notes that the Government asserts that it has fully responded to RFP. No. 9 (Dkt. 29 at 10), which is a proper discovery response.

**4.     Private Matter**

In its previous order, the Court found that "the specific facts behind the Army's initial position that West's actions raised a 'private civil matter' may create a material factual dispute as to West's scope of employment." Dkt. 22 at 6. In the instant matter, Etherage seeks information that has already been denied by the Court as well as information that directly relates to the position that this was a "private matter." With regard to RFP's Nos. 13 & 15, the Court relies on his previous order and denies Etherage's motion to compel the Government's response to RFP's that seek materials that evidence the Army's response or non-response to Etherage's complaints about West.

With regard to RFP No. 14, the Court grants Etherage's motion on this request because the request seeks any information that concerns any employee's position on the issue of the dispute between Etherage and West being a "private matter."

## C. Expenses

If a court grants a motion to compel, it must require the party failing to act to pay the reasonable expenses of the other party caused by the failure "unless other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). The Government argues that an award of expenses would be unjust because, in an action challenging a certification, Etherage has the burden to prove that discovery is appropriate. Dkt. 29 at 12-13. The Court agrees with the Government and finds that its objections were substantially justified. Therefore, Etherage's request for an award of reasonable expenses is denied.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Etherage's Motion to Compel Discovery (Dkt. 26) is **GRANTED in part** and **DENIED in part** as set forth herein.

DATED this 27th day of October, 2011.

BENJAMIN H. SETTLE
United States District Judge