UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH ETHERAGE and KIRSTIN ETHERAGE, and the marital community thereof,

Plaintiffs,

v.

UNITED STATES,

Defendant.

CASE NO. C11-5091 BHS

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on Defendant United States' motion to dismiss (Dkt. 52). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On October 29, 2010, Plaintiffs Joseph and Kirstin Etherage's ("Etherage") filed a complaint against Defendants Johnny and Jane Doe West ("West")[1] in the Superior Court for the State of Washington in and for the County of Pierce. Dkt. 1, Exh. A

---

[1] On June 6, 2011, the United States was substituted as Defendant. Dkt. 25.

ORDER - 1

("Complaint"). Etherage asserts claims for intentional interference with employment relationship/interference with contract expectancy, libel per se, slander per se, invasion of privacy, slander, and libel. *Id*.

On February 1, 2011, the matter was removed to this Court. Dkt. 1.

On Frebrauary 28, 2011, the Government moved to substitute the United States as the sole defendant because the United States Attorney for the Western District of Washington, Jenny A. Durkin, certified that Defendant Johnny West was acting within the scope of his employment at all times relevant to the claims set forth in the Complaint. Dkt. 6. The Government also moved to dismiss the Complaint on the basis of sovereign immunity. *Id*.

On March 18, 2011, the Court granted the parties' stipulation to suspend briefing on the motion to dismiss in light of Etherage's desire to conduct specific discovery. Dkt. 11.

On May 19, 2011, the Court granted in part Etherage's motion to compel certain discovery. Dkt. 22. On October 27, 2011, the Court granted in part Etherage's second motion to compel discovery. Dkt. 32. On August 22, 2012, the Court denied Etherage's third motion to compel. Dkt. 47.

On October 29, 2013, the Court granted the parties' stipulation to renote the motion to dismiss and set a briefing schedule. Dkt. 49. On January 7, 2013, Etherage responded. Dkt. 50. On January 18, 2013, the Government replied. Dkt. 52.

## II. FACTUAL BACKGROUND

During the relevant time, Etherage was Deputy Chief of the Department of Behavioral Health at Madigan Army Medical Center ("Madigan"), located on Joint Base Lewis McChord), and responsible for the development and deployment of the Automated Behavioral Health Clinic ("ABHC"), a software tool designed to assess soldiers' mental health. Dkt. 15, Declaration of Dr. Joseph Etherage ("Etherage Decl."), ¶¶ 2, 7; Dkt. 19, Declaration of David T. Orman ("Orman Decl.") ¶ 3. Etherage served as Deputy Director and Clinical Requirements Advisor for ABHC. Etherage Decl. ¶ 5. At Madigan, Etherage worked with Glenn Iacovetta, who served as the ABHC Technical Program Manager. Dkt. 18, First Declaration of Johnny L. West ("West Decl.") ¶ 5.

The Post Traumatic Stress Disorder-Traumatic Brain Injury/Behavioral Health Integration Office ("PTB") Headquarters, U.S. Army Medical Command ("MEDCOM") in San Antonio, Texas, funded and provided oversight to ABHC. *Id*. ¶¶ 2-3. West served as a Senior Program Manager at the PTB, responsible for general oversight of the ABHC program, among other programs. *Id*. ¶ 4. As Senior Program Manager, West declares that he was responsible for assessing the efficacy of the ABHC program, tracking the program's development schedule, ensuring program compliance with laws and regulations, coordinating administrative approvals for the program, and monitoring the ABHC's budget. *Id*. ¶ 4; Orman Decl. ¶ 4.

West declares that he and Mr. Iacovetta have a longstanding friendship. They have known each other for over 15 years and served two tours of duty together in the Army. *Id*. ¶ 6. In fact, West recommended Mr. Iacovetta for the ABHC Technical Program

ORDER - 3

1  Manager position. *Id*. In June 2010, Mr. Iacovetta raised concerns with West that
2  Etherage may be inappropriately spending funds on the development of ABHC after
3  further development of the program was halted due to fiscal law concerns. *Id*. ¶ 7.

4  In several emails, West raised various concerns relating to the operation and
5  funding of ABHC. *See* Etherage Decl., Exh D & E. In general, West raised concerns
6  regarding costs associated with the program, funding of the program after development
7  was halted, use of a contractor without the necessary approvals, as well as general
8  mismanagement of ABHC. *Id*., Ex. E ("I would strongly suggest that you have a talk
9  with Mr. Rick Barnhill about what was said in an open forum about [Etherage's] multiple
10 request/demands on the contractor that were made outside of Glenn and the KO's
11 knowledge."); *id*., Ex. K ("[Etherage] has a personal relationship with the contractor, and
12 was the COR prior to Mr. Icovetta – and carries on a regular dialogue with the contractor
13 . . ."). West declares that he raised these issues out of the concern for the ABHC program
14 and as part of his role as Program Manager. West Decl. ¶ 10.

15 Etherage declares that he repeatedly attempted to address these issues within his
16 chain of command. Etherage Decl., ¶ 25. He claims that he was informed that the Army
17 was not going to take action, that his supervisors were not in the same chain of command
18 as West, and that they therefore could not initiate any investigation and would have to
19 request an investigation through the Medical Command level. *Id*. Etherage asserts that
20 he has repeatedly been told that this was a private matter. *Id*. Etherage also pursued the
21 issue through the Inspector General's office. *Id*. His complaints were referred to the
22 MEDCOM Inspector General's office which declined to pursue the matter because it was

personal in nature and not related to Dr. Etherage's and Mr. West's scope of employment. *Id.*; *see also id.*, Exhibit M.

## III. DISCUSSION

The district court's review of an Attorney General's certification is *de novo*. *Meridian Intern. Logistics, Inc. v. U.S.*, 939 F.2d 740, 745 (9th Cir. 1991). The Attorney General's certification is conclusive unless challenged. *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153 (4th Cir. 1997). When the certification is challenged, it serves as *prima facie* evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment. *Id.* In determining whether a United States employee acted within the scope of his or her office or employment, the district court applies the law of the state in which the alleged tort occurred. *Green v. Hall*, 8 F.3d 695, 698-99 (9th Cir. 1993).

In this case, Etherage requests that, in addition to Washington case law, the Court consider the factors set forth in the Restatement (Second) of Agency §§ 228 & 229 (1958). Dkt. 50 at 9. Although Etherage fails to show that a Washington court has specifically adopted and applied either section of this Restatement, the Court will address Etherage's arguments.

**A.     Washington Case Law**

The Washington State Supreme Court set forth the test for vicarious liability as follows:

> Our case law makes clear that, once an employee's underlying tort is established, the employer will be held vicariously liable if the employee was acting within the scope of his employment. An employer can defeat a claim of vicarious liability by showing that the employee's conduct was (1) "intentional or criminal" and (2) "outside the scope of employment."

*Robel v. Roundup Corp.*, 148 Wn.2d 35, 52–53 (2002) (internal citations and quotations omitted). The test for determining when an employee acts within the scope of employment is as follows:

> whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.

*Rahman v. Washington*, 170 Wn.2d 810, 815–16 (2011). "The proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Robel*, 148 Wn.2d at 53. For example, in *Robel*, the court found that "the Fred Meyer deli workers tormented Robel on company property during working hours, as they interacted with co-workers and customers and performed the duties they were hired to perform." *Id*. at 54.

On the other hand, Washington courts have found that an act is outside the scope of employment if it is "far beyond" or "too little actuated" by a purpose to serve the employer. *See, e.g., Smith v. Sacred Heart Med. Cent.*, 144 Wn. App. 537 (2008) (sexual misconduct furthering the employee's "compulsion for personal sexual gratification"); *Niece v. Elmview Group Home*, 131 Wn. 2d 39 (1997) (employee of group home was outside scope of employment when he raped a disabled resident); *Kuehn v. White*, 24 Wn.

1  App. 274 (1979) (truck driver's assault of another driver with metal pipe was outside of

2  scope).

3  In this case, Etherage has failed to produce evidence to overcome the presumption

4  that West was acting outside the scope of his employment.  First, West's action were not

5  different in kind from those authorized by the Army.  West's direct supervisor, David

6  Orman, declares that West "had oversight and management responsibilities over the

7  ABHC program."  Orman Decl., ¶ 17.  Specifically, Dr. Orman states that

8  > West was responsible for assessing the efficacy of the ABHC program;
   > tracking its development schedule; ensuring program compliance with
9  > federal law and internal regulations; coordinating administrative approvals
   > from higher headquarters; and monitoring the program's budget.

10  *Id*.  Etherage argues that the Govenrment has failed to produce any evidence to support

11  the "self-serving and conclusory" statements from West's "long-time friend and ally, Dr.

12  David Orman."  Dkt. 50 at 10.

13  Contrary to Etherage's assertion, the Government has produced documents

14  showing West's official job duties.  For example, West's job description indicates that he

15  is responsible for providing "systematic management, initiative/program oversight,

16  coordination and integration of all PTBI programs [like the ABHC]."  Dkt. 53,

17  Declaration of Kayla C. Stahman (Second), Exh. A.  The Government has also produced

18  an email showing that West was included on a short list of five individuals, including

19  Etherage, that were required to be kept in the loop about ABHC development.  *Id*., Exh.

20  C.  Moreover, West's 2010 Performance Evaluation clearly establishes that he had

21  oversight over the ABHC when it indicates that he has "exceeded expectations" with

22

respect to his responsibilities supervising the ABHC project. *Id.*, Exh. B. Therefore, the Court finds that West was fulfilling his job functions at the time the alleged harm occurred.

Second, it's abundantly clear that all of the alleged actions were not made beyond the employer's authorized time or space limits. In fact, all of the alleged slanderous emails West sent regarding Etherage were sent via West's work email, from his work computer, during the work day, and concerned Etherage's at-work performance. West Decl., ¶ 10; Orman Decl., ¶ 10. Therefore, the Court finds that West's actions occurred during his employment parameters.

Third, the actions in question served the Army's interests. It's undisputed that the Army has an interest in Etherage's leadership and potential issues regarding funding of a mental health program. The Government contends that:

> There is no question that the Army has an interest in ensuring funds for the project were properly allocated and Army regulations regarding outside contractors were followed. Any statements made by Mr. West about Dr. Etherage's management style or his allocation of funds for the project were made to actuate that purpose.

Dkt. 52 at 14. The Court agrees and finds that West's actions were not far beyond or too attenuated to serve the Army's purpose. Therefore, the Court finds that Etherage has failed to meet his burden under Washington law to overcome the attorney general's conclusion that West was acting outside the scope of his employment.

**B.    Restatement of Agency**

Etherage cites two cases from the Washington Court of Appeals for the proposition that the Court should adopt and apply two sections of the Restatement

(Second) of Agency. Those cases are *Hays v. Lake*, 36 Wn. App. 827 (1984); and *Sanders v. Del Day*, 2 Wn. App. 393 (1970). Both cases merely reference sections 228 and 229 of the Restatement (Second) of Agency without specifically adopting or applying the sections. *See, e.g., id.* at 397–398. With regard to section 228, it sets forth almost identical language as the Washington Supreme Court used in considering scope of employment issues:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     (a) it is of the kind he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits;
>     (c) it is actuated, at least in part, by a purpose to serve the master . . . .
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958). Application of this test provides no additional help to Etherage as it is essentially the test that was applied under Washington law.

With regard to the other section cited by Etherage, section 229 provides some considerations for determining whether conduct is within the scope of employment. The specific considerations are as follows:

> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

        (f) whether or not the master has reason to expect that such an act will be done;

        (g) the similarity in quality of the act done to the act authorized;

* * *

        (i) the extent of departure from the normal method of accomplishing an authorized result.

Restatement (Second) of Agency § 229 (1958). The Court finds that these considerations have already been addressed (the time, place, and purpose of the act) or are irrelevant (the act is one commonly done by such servants) because of West's individual and specific job duties. Therefore, the Court finds that the relevant portions of the Restatement are already incorporated into Washington law, or are irrelevant for the current analysis.

**C.   Remedy**

Both parties agree that, if the Court finds that West was acting within his scope of employment, then the United States is the proper party and the complaint should be dismissed on sovereign immunity grounds. Etherage, however, argues that the "intent of the respondeat superior doctrine is to provide additional redress to harmed individuals." Dkt. 50 at 7. Etherage cites *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, (2001), for the proposition that the doctrine of respondeat superior holds "employers liable for social and economic policy reasons such as the employer's authority over the employee and the employer's deep pocket." *Id*. at 360, n. 3. Etherage concludes that application of the doctrine in this case "produces a perverse, and inequitable and unintended, application of Washington's law regarding principal and agent liability" because the principal is immune from suit. Dkt. 50 at 6–7. While there might be some merit to this conclusion, the Washington courts have not created an exception for a

narrower scope of employment analysis in these circumstances and the federal government has not waived immunity for the torts asserted in this case. Therefore, applying the law of the state and the nation, the Court grants the Government's motion to dismiss because the United States is the proper defendant and is immune from suit.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Government's motion to dismiss (Dkt. 32) is **GRANTED** and Etherage's complaint is **DISMISSED** for lack of jurisdiction. The Clerk shall close this case.

Dated this 10th day of April, 2013.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge